UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOHN BRICKER,<br><br>Plaintiff,<br>v.<br><br>WEICHERT REAL ESTATE AFFILIATES, INC.;<br>WEICHERT OF NORTH AMERICA, INC.;<br>MARY P. WELTY-MEYER, INDIVIDUALLY<br>DUNEGRASS PROPERTIES INC. D/B/A<br>WEICHERT REALTORS - MERRION GROUP;<br>CHRIS REDLARCZYK, INDIVIDUALLY, AND<br>REDLARCZYK PROPERTIES, LLC,<br><br>Defendants. | CAUSE NO. 3:26-cv-00702-DRL-SJF |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES**

Come now Defendants, Dunegrass Properties Inc. dba Weichert Realtors Merrion Group, Mary P. Welty-Meyer, Weichert Real Estate Affiliates Inc. and Weichert North America, Inc.,by counsel and for their Answer and Affirmiatve Defenses to the Plaitiff's First Amended Cmplaint for Damages would state as follows:

## I. NATURE OF THE ACTION

1. This action arises from a coordinated effort by Defendants and certain non-party co- conspirators to defame Plaintiff and to procure an Indiana state-court eviction of Plaintiff from commercia l premises through false sworn affidavits and unsworn ex parte letters submitted to a sitting Indiana state-court judge in May 2024. The false statements were the work product of a conspiracy organized by non-party James M. Epstein and executed through licensed real estate professionals affiliated with Weichert-branded brokerage operations i n Indiana and through a

separate landlord (Defendant Chris Redlarczyk) whose written submissions to the trial court contradicted his own contemporaneous communications with Plaintiff. The defamatory statements supported an eviction proceeding that ultimately resulted in the involuntary shutdown of Plaintiff s established commercial restaurant equipment business for more than two years, causing substantial economic, reputational. and consequential damages.

**ANSWER: Defendants deny each and every allegation contained in paragraph 1 under Count I of Plaintiff's First Amended Complaint.**

2. Defendant Mary P. Welty-Meyer (managing broker of Defendant Dunegrass Properties, Inc., operating under the assumed business name Weichert Realtors -Merrion Group) filed a sworn affidavit, and her affiliated licensee Marge Skwiat Gloy submitted an unsworn letter, in LaPorte Superior Court No. 4 on May 21 and May 22, 2024, in the matter of Lakefront Associates. LLC v. John Bricker, Cause No. 46D04-2404-EY-000564, containing materially false statements about Plaintiff s commercial tenancy and conduct Defendant Chris Redlarczyk submitted an unsworn, unnotarized ex parte letter to the same court in the same proceeding, addressed directly to the presiding judge, repeating allegations against Plaintiff that Defendant Redlarczyk's own contemporaneous text-message communications with Plaintiff contradict. All three submissions were filed in support of Lakefront Associates LLC's May 22, 2024 Motion to Expedite Hearing.

**ANSWER: Defendants deny each and every allegation contained in paragraph 2 under Count I of Plaintiff's First Amended Complaint.**

3. Plaintiff communicated directly with Mr. Peter Zafonte, the President of the franchise division of Defendant Weichert Real Estate Affiliates, Inc., in May 2024, notifying corporate of the false sworn statements and requesting corrective action. Mr. Zafonte

acknowledged the communication and represented that he would investigate. Neither Weichert Real Estate Affiliates, Inc. nor Weichert of North America, Inc.-which holds its own active Indiana Real Estate Broker Company license and operates an Indiana brokerage office in Carmel, Indiana through a designated Indiana franchise manager -took any corrective action. Both franchisor- level entities continued to permit the use of the Weichert brand by an Indiana franchisee that was, by that time and by the date of this Complaint, operating through a corporate vehicle in continuous regulatory default with the Indiana Secretary of State.

**ANSWER: Defendants deny each and every allegation contained in paragraph 3 under Count I of Plaintiff's First Amended Complaint.**

4. Plaintiff seeks compensatory damages for defamation per se, civil conspiracy, negligent misrepresentation, negligent supervision, and tortious interference with prospective business advantage. Plaintiff also seeks punitive damages based on express malice declared in contemporaneous private communications by non-party James M. Epstein and his deceased brother (non-party John Epstein, formerly a co-conspirator), and on reckless disregard for the truth demonstrated by Defendants' own contemporaneous written communications.

A**NSWER: Defendants deny each and every allegation contained in paragraph 4 under Count I of Plaintiff's First Amended Complaint.**

## II. JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U .S.C. § 1332(a) because the parties are citizens of different slates and the amount in controversy exceeds $75,0001 exclusive of interest and costs.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 5 under Count II**

**of Plaintiff's First Amended Complaint, and the same are therefore denied.**

6. Plaintiff John Bricker is a citizen of the State of Michigan, residing in New Buffalo, Michigan.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 6 under Count II of Plaintiff's First Amended Complaint, and the same are therefore denied.**

7. Defendant Weichert Real Estate Affiliates, Inc. is a corporation incorporated under the laws of Delaware with its principal place of business at 1625 Route 10 East, Morris Plains, New Jersey, and is accordingly a citizen of Delaware and New Jersey.

**ANSWER: Defendants admit the allegations contained in paragraph 7 under Count II of Plaintiff's First Amended Complaint.**

8. Defendant Weichert of North America, Inc. is a corporation incorporated under the laws of Delaware with its principal place of business at 1625 State Route 10, Morris Plains, New Jersey, and is accordingly a citizen of Delaware and New Jersey. Weichert of North America, Inc. is registered to do business in Indiana as a foreign for-profit corporation (Indiana Business ID 2007012900372) and holds an active Indiana Real Estate Commission Broker Company license (License No. CO50700072) at 10646 Walnut Creek Drive West, Carmel, Indiana, with a designated Indiana manager.

**ANSWER: Defendants admit the allegations contained in paragraph 8 under Count II of Plaintiff's First Amended Complaint.**

9. Defendant Mary P. Welty-Meyer (also known as Tricia Welty-Meyer) is an individual citizen of the State of Indiana, residing in Michigan City, Indiana, and is the managing broker of the Indiana brokerage operating at 1010 N. Karwick Road, Michigan City, Indiana.

**ANSWER: Defendants admit the allegations contained in paragraph 9 under Count II of Plaintiff's First Amended Complaint.**

10. Defendant Dunegrass Properties, Inc. is a corporation incorporated under the laws of Indiana (Indiana Business ID 2014022000562), and is accordingly a citizen of Indiana for diversity jurisdiction purposes. For the Court's evaluation of citizenship under any applicable standard: (a) Dunegrass Properties, Inc. was incorporated in Indiana on February 20, 20 14; (b) its principal place of business when last operating was 1010 N. Karwick Road, Michigan City, Indiana 46360; (c) the last place in which it transacted business was Michigan City. LaPorte County, Indiana; and (d) it became inactive on August 5, 2024, when it was administratively dissolved by the Indiana Secretary of State for failure to tile the required Business Entity Report. Dunegrass Properties, Inc. remains suable for acts during its existence pursuant to Indiana Code § 23-1-45-7. At all relevant times, Dunegrass Properties, Inc., operated under the assumed business name "Weichert Realtors -Merrion Group" -an assumed business name now administratively cancelled -and held an active Indiana Real Estate Commission Broker Company license (License No. RCS 1400056), notwithstanding the administrative dissolution or the underlying corporate entity.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 10 under Count II of Plaintiff's First Amended Complaint, and the same are therefore denied.**

11. Defendant Chris Redlarczyk is an individual citizen of the State of Indiana, domiciled in Indiana.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 11 under Count II**

**of Plaintiff's First Amended Complaint, and the same are therefore denied.**

12. Defendant Redlarczyk Properties, LLC is an Indiana domestic limited liability company (Indiana Business ID 2007052200234), formed May 21, 2007, with its principal office at 107 Freyer Road, Michigan City, Indiana. Christopher James Redlarczyk. represented in a signed writing Submitted to LaPorte Superior Court No. 4 that he is "the rightful owner of Redlarczyk Properties and the entire building" at 107 Freyer Road (Exhibit C), and the records of the Indiana Secretary of State identify Christopher James Redlarczyk as the LLC's sole governing person (President) and its registered agent. On this basis, Christopher James Redlarczyk is the sole member of Redlarczyk Properties LLC. Christopher James Redlarczyk is an individual citizen of the State of Indiana. Because the sole member of Redlarczyk Properties, LLC is a citizen of Indiana, Redlarczyk Properties, LLC is itself a citizen of Indiana for purposes of diversity jurisdiction. Redlarczyk Properties, LLC was the named landlord under Plaintiff's 2008 commercial lease for the premises at 107 Freyer Road, Michigan City, Indiana, and remains the title-holder and operating entity of those premises.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 12 under Count II of Plaintiff's First Amended Complaint, and the same are therefore denied.**

13. Complete diversity exists between Plaintiff and all named Defendants. No Defendant shares Michigan citizenship with Plaintiff. The amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 13 under Count II of Plaintiff's First Amended Complaint, and the same are therefore denied.**

14. Venue is proper in this District pursuant to 28 U.S.C. §139l(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in LaPorte County, Indiana, which lies within the Northem District of Indiana, South Bend Division. The defamatory submissions were filed in LaPorte Superior Court No. 4; the brokerage operations at issue are located in Michigan City, LaPorte County, Indiana; and the commercial premises whose tenancy formed the subject of the underlying false statements are located in LaPorte County.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 14 under Count II of Plaintiff's First Amended Complaint, and the same are therefore denied.**

14A. This action does not seek review, reversal, vacatur, or modification of any judgment, order, or ruling entered in the underlying state-court eviction proceeding, and Plaintiff does not ask this Court to sit in appellate review of any state-court decision. Plaintiff's injuries --including the publication of false and defamatory statements about him, the republication of those statements within the commercial real-estate community, and the resulting reputational and economic harm-are independent of the state-court eviction judgment and were caused by Defendants' own tortious conduct rather than by any act of the state court. This Court's exercise of jurisdiction over these independent tort claims is therefore consistent with the limitation recognized in Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005).

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 14A under Count II of Plaintiff's First Amended Complaint, and the same are therefore denied.**

## III. PARTIES

15. Plaintiff John Bricker is an individual who at all relevant times operated an established commercial business engaged in the purchase) storage, restoration, and resale of used commercial restaurant equipment (and beginning during the COVID-19 pandemic, used medical equipment). Plaintiff was the tenant at 107 Freyer Road, Michigan City, Indiana from 2008 through September 2024 (under Defendant Redlarczyk Properties, LLC as landlord), and the tenant at the commercial property having addresses of 3609 East U.S. Highway 12, 210 Freyer Road, and 208 Freyer Road) Michigan City, Indiana (collectively, the "2 LO Freyer Property") from June 2023 through the events giving rise to this action (under Lakefront Associates, LLC as nominal landlord).

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 15 under Count III of Plaintiff's First Amended Complaint, and the same are therefore denied.**

16. Defendant Weichert Real Estate Affiliates, Inc.("WREA") is the franchisor of the Weichert real estate brand. WREA licenses use of the Weichert brand to independent brokerages including Defendant Dunegrass Properties, Inc. operating under the assumed business name Weichert Realtor's -Merrion Group at 1010 N. Karwick Road, Michigan City) Indiana. WREA's franchise agreements, as described in WREA's Franchise Disclosure Document issued March 14, 2025, require franchisees to comply with operating standards established by WRBA and confer on WREA inspection and audit rights to monitor compliance with franchise standards, WREA reserves the right to terminate franchise agreements for non-compliance with brand standards and regulatory requirements.

**ANSWER: Defendants admit the allegations contained in paragraph 16 under**

**Count III of Plaintiff's First Amended Complaint.**

17. Defendant Weichert of North America, Inc. ("Weichert of North America") is a Weichert - affiliated entity that holds an active Indiana Real Estate Commission Broker Company license and operates a Weichert-branded brokerage office in Carmel) Indiana, with a designated Indiana manager (Kevin A. Hill, Indiana real estate broker license RB 14047116). Upon information and belief, Weichert of North America possesses operational responsibility, training, compliance, and supervisory functions relating to Weichert-branded brokerages operating in Indiana. including Defendant Dunegrass Properties, Inc.'s brokerage at 1010 N. Karwick Road. Upon information and belief, Mr. Hill served as Weichert of North America's Indiana franchise manager with specific responsibility for monitoring Indiana Weichert franchisees during the periods relevant to this Complaint.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 17 under Count III of Plaintiff's First Amended Complaint, and the same are therefore denied.**

18. Defendant Mary P. Welty-Meyer ("Welty-Meyer") is the managing broker of the brokerage operating under the trade name "Weichert Realtors - Merrion Group" at 1010 N. Karwick Road. Michigan City, Indiana. Welty-Meyer is a licensed Indiana real estate broker (License No. RB14043015). Welty-Meyer is the President and registered agent of Defendant Dunegrass Properties, Inc.

**ANSWER: Defendants admit the allegations contained in paragraph 18 under Count III of Plaintiff's First Amended Complaint.**

19. Defendant Dunegrass Properties, Inc. is the Indiana for-profit corporation that has at all relevant times operated the brokerage under the assumed business name "Weichert Realtors

- Merrion Group." Dunegrass Properties, Inc. was administratively dissolved by the Indiana Secretary of State on August 5, 2024 for failure to file the required Business Entity Report by February 29, 2024. Notwithstanding this administrative dissolution and the prior administrative cancellation of the "Weichert Realtors -Merrion Group" assumed business name, Dunegrass Properties, Inc. continued to operate the brokerage al 1010 N. Karwick Road under that trade name and continued to hold its Indiana Real Estate Commission Broker Company license through the date of this Complaint.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 19 under Count III of Plaintiff's First Amended Complaint, and the same are therefore denied.**

20. Defendant Chris Redlarczyk ("Redlarczyk") is an Indiana individual who, at all relevant times, has held himself out as the controlling owner and operator of multiple commercial enterprises in Northwest Indiana, including Freezing Systems & Services, Inc. (an entity that fabricates and supplies custom industrial equipment) and Defendant Redlarczyk Properties, LLC.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 20 under Count III of Plaintiff's First Amended Complaint, and the same are therefore denied.**

21. Defendant Redlarczyk Properties, LLC is the Indiana limited liability company that owns and operates the commercial premises located at 107 Freyer Road, Michigan City, Indiana. At all relevant times, Redlarczyk Properties, LLC was the named landlord of Plaintiff under a written commercial lease executed in December 2008 and the successive month-10-month tenancies that followed.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 21 under Count III of Plaintiff's First Amended Complaint, and the same are therefore denied.**

22. Non-parties referenced in this Complaint as co-conspirators include James M. Epstein (controlling principal of Lakefront Associates, LLC and personal title-holder of the 210 Freyer Property); his deceased brother John Epstein (who participated in the conspiracy through coordinated written communications, including a fake "press release" drafted in May 2024 that introduced the "hoarder" characterization later incorporated into Defendant Gloy's letter); Marge Skwiat Gloy (signatory of the May 22, 2024 letter, whose conduct is attributed in this action to her principal Defendant Dunegrass Properties, Inc. under respondeat superior); Lakefront Associates, LLC (corporate vehicle used by Epstein); and Peachtree Partners-Indiana I, LLC, Robert Harnach, and Phil Ferrise (subsequent purchasers and co-conspirators in events reserved for separate proceedings). Plaintiff's claims against these non-parties arising from conduct distinct from the May 2024 false-statement conspiracy are reserved as described in Section VII.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 22 under Count III of Plaintiff's First Amended Complaint, and the same are therefore denied.**

## IV. FACTUAL ALLEGATIONS

### *A. Plaintiff's Established Commercial Business and Long-Term Tenancy at 107 Freyer Road*

23. In or about December 2008, Plaintiff entered into a written commercial lease with Defendant Redlarczyk Properties, LLC for commercial space at 107 Freyer Road, Michigan City, Indiana, for the purpose of storing, restoring, and reselling used commercial restaurant

equipment. Following expiration of the initial written term, Plaintiff continued in possession with the consent of Redlarczyk Properties, LLC, and the tenancy converted to a continuous month-to-month commercial tenancy that continued without interruption for approximately sixteen years.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 23 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

24. Throughout that approximately sixteen-year period, the landlord-tenant relationship between Plaintiff and Defendant Redlarczyk was amicable. Defendant Redlarczyk Properties, LLC accepted Plaintiff's rent payments month after month. Defendant Redlarczyk never served Plaintiff with the written notice of termination required by Indiana law to terminate a month-to month tenancy, and never invoked the contractual notice-and-cure procedure in the lease. Plaintiff was a continuous lawful month-to-month tenant in good standing through September 2024.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 24 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

25. Prior to the COVID-19 pandemic. Plaintiff's commercial restaurant equipment business generated annual revenue in excess of $300,000. The COV 10-19 pandemic caused approximately 30% of Plaintiff's restaurant customers to close permanently. Plaintiff adapted by pivoting a portion of his inventory and sales operations into used medical equipment, generating approximately $120,000 in annual revenue during the pandemic period. At the time of the May 2024 events giving rise to this Complaint, Plaintiff was actively rebuilding his commercial operations toward pre-pandemic levels.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 25 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

***B. The Failing Roof at 107 Freyer Road and Plaintiff's Disclosed Withholding of Rent***

26. During Plaintiff's tenancy at 107 Freyer Road, the roof of the building progressively failed. Water intrusion through the failing roof produced continuous wet conditions on the floor and caused substantial damage to Plaintiff's commercial inventory, including to inventory stored on the upper tiers of pallet racking systems. Photographic and video evidence of the roof condition during Plaintiff's tenancy is in Plaintiff's possession.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 26 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

27. In or about September 2023, Plaintiff met personally with Defendant Redlarczyk and notified him directly that Plaintiff would be ceasing rent payments to Redlarczyk Properties, LLC due to the documented habitability failures at the property and the damage being done to Plaintiff's commercial inventory. Defendant Redlarczyk did not object to this notification at the time of the meeting. Defendant Redlarczyk did not serve Plaintiff with any notice of default, did not serve any notice to quit, did not file an eviction action, and did not threaten litigation. The amicable landlord-tenant relationship continued.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 27 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

28. Plaintiff had begun preparing to vacate 107 Freyer Road before entering into the lease for the 210 Freyer Property, and continued to actively prepare to vacate throughout the period that followed. The move was extended by two material factors: (a) the discovery, during the move, of substantial additional inventory damage to items previously stored on the upper tiers of pallet racking systems that was not visible until those items were removed during packing and (b) beginning in August 2024, the unrelated lockout of Plaintiff from the 210 Preyer Property by non-party James M. Epstein, which disrupted Plaintiff's planned logistics for consolidating his commercial operations.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 28 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

29. Throughout the move period, Plaintiff faced a documented regional commercial labor shortage caused by the rapid construction of approximately fifteen Michigan cannabis retail facilities within approximately two miles of the New Buffalo. Michigan / Michigan City, Indiana border. The construction demand absorbed substantially all available local commercial and temporary labor in the area. Plaintiff was unable to obtain adequate moving labor through local temporary employment agencies during the relevant period .

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 29 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

30. Upon information and belief, non-party James M. Epstein actively interfered with Plaintiff's ability to retain temporary workers by threatening eviction of workers who resided in an apartment on Epstein's property at 3609 East U.S. Highway 12 if those workers were

observed working for Plaintiff. Marge Skwiat Gloy participated in this interference by reporting to Epstein when she observed such workers at Plaintiff's commercial operations. This coordinated labor interference, combined with the documented regional labor shortage, was a deliberate effort to prevent Plaintiff from completing his move-out and thereby create the appearance of intransigence that the May 2024 false statements exploited.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 30 under Count IV of Plaintiff’s First Amended Complaint, and the same are therefore denied.**

31. On May 31, 2024, Defendant Redlarczyk sent Plaintiff the following text message· "Hey John, I'm getting ready to cross into Canada fishing, what is your eta completion of moving out?" Plaintiff responded that Plaintiff was waiting on one more trailer. Defendant Redlarczyk replied: "Okay, thanks hopefully we slay some walleye." This communication reflects the contemporaneous, amicable, and unhurried nature of the landlord-tenant relationship between Plaintiff and Defendant Redlarczyk as of late May 2024 -nine days after Lakefront Associates, LLC filed its Motion to Expedite Hearing supported by Defendant Redlarczyk’s letter. The communication reflects no urgency or demand for Plaintiff to vacate.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 31 under Count IV of Plaintiff’s First Amended Complaint, and the same are therefore denied.**

32. On August 15, 2024, Defendant Redlarczyk sent Plaintiff a further text message: “Good morning john How close are you up front almost done?" Plaintiff responded that the move should have been completed but that "the help issue is untenable" -referencing the documented regional labor shortage. Defendant Redlarczyk acknowledged this response without

objection. Throughout the entirety of the period between Plaintiff s September 2023 notification and Plaintiff's September 2024 completion of the move, Defendant Redlarczyk never served any notice of termination, never filed any eviction action, and never sought any judicial intervention against Plaintiff.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 32 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

33. Plaintiff completed the move from 107 Freyer Road in or about September 2024. Approximately four months after Plaintiff vacated, the wooden barrel-vaulted roof of the building at 107 Freyer Road collapsed entirely. Photographic evidence of the collapsed roof, attached hereto as Exhibit E, shows the building permanently exposed to the elements. This catastrophic structural failure confirms the deteriorating roof condition that caused inventory damage during Plaintiff s tenancy and that motivated Plaintiff s lawful rent withholding.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 33 under Count IV of Plaintiff's Complaint, and the same are therefore denied.**

***C. The Separate Tenancy at the 210 Freyer Property***

34. On or about May 15, 2023, Plaintiff and Lakefront Associates, LLC executed a commercial lease for the 210 Freyer Property, with a lease effective date of June 1, 2023. Lakefront Associates, LLC was identified as the lessor in the lease documentation. Title to the 210 Freyer Property was held by James M. Epstein personally. Lakefront Associates, LLC was at all relevant times an alter ego of James M. Epstein, holding no operational assets of its own.

Epstein selectively used Lakefront's corporate form to limit his personal liability while collecting rent and entering purchase agreements in his individual capacity.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 34 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

35. At the time Plaintiff executed the 210 Preyer Properly lease in May 2023, James M. Epstein did not disclose to Plaintiff that he was simultaneously listing the property for sale through a real estate brokerage. This non-disclosure at lease formation foreshadowed the later non-disclosures by Epstein to subsequent prospective purchasers (including Rosario Scalise, LLC) about the existence of Plaintiff's tenancy -a recurring pattern of material non-disclosure that the conspiracy was designed to manage when those non-disclosures became visible to the other parties involved.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 35 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

36. The 210 Freyer Property lease provided for a twelve-month initial term with a 60-day cancellation requirement applicable to any termination as of June 1, 2024 or thereafter. The lease specifically required that all notices and demands by Landlord to Tenant be sent by certified United States mail. The lease included a default procedure requiring Landlord to provide written notice of non-payment with a ten-day cure period before non-payment could constitute a breach. A First Addendum to the lease included a clawback provision requiring return of any prepaid rental to Plaintiff in the event of a sale-triggered termination during the initial twelve-month term.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 36 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

37. On April 24, 2024, Lakefront Associates, LLC filed an eviction action against Plaintiff in LaPorte Superior Court No. 4, Cause No. 46D04-2404-EV-000564, alleging non-payment of rent. The case was assigned to the Honorable Greta Stirling Friedman. The eviction was scheduled for hearing on July 10, 2024.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 37 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

38. Plaintiff's commercial broker, the Weichert Realtors -Merrion Group brokerage operated by Defendant Welty-Meyer, was the listing agent retained by James M. Epstein for the sale of the 210 Freyer Property. Marge Skwiat Gloy was identified as the listing broker of record on the purchase agreement executed January 31, 2024 between James M. Epstein (Seller) and Rosario Scalise, LLC (Buyer), and on the related Amendment #l executed March 28, 2024 which set the purchase price at $515,000 and conditioned the May 19, 2024 closing on "the Tenant (John Bricker) moving out". Defendants Welty-Meyer and Gloy (through Dunegrass Properties, Inc.) had a direct documented financial interest in the eviction succeeding, in the form of real estate commissions contingent on the property being delivered vacant to the prospective purchaser.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 38 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

***D. The Welty-Meyer Affidavit Filed May 21, 2024***

39. On May 21, 2024, Defendant Welty-Meyer signed and filed a sworn affidavit in LaPorte Superior Court No. 4, Cause No. 46D04-2404-EV-000564, attached hereto as Exhibit A. The affidavit was notarized by Carolyn J. Stiles. Welty-Meyer's affidavit contained the following material factual representations made under oath:

a. "In my 22 years of real estate, I have never been involved with short term renter of my clients who refused to move out of the space, which he hasn't paid rent."

b. "Mr. Bricker obtuse nature has caused us a default on two closing dates, February 29th and now again on May 20th. This cost us $26,000 in commissions, and more time and effort, which we will never get back."

c. "I'm devastated, that this man like John Bricker can injury so many people, when he knew about transaction since early February ."

**ANSWER: Defendants admit the allegations contained in paragraph 39 under Count IV of Plaintiff's First Amended Complaint.**

40. Each of the above statements was a statement of purported fact made under oath in support of a pending eviction action. Each was materially false. Each was made by Welty-Meyer without firsthand knowledge of the matters represented, and each was made with reckless disregard for the truth. In particular, Defendant Welty-Meyer's sworn statement that Plaintiff "knew about [the] transaction since early February" was itself false: Plaintiff was never notified of the January 31, 2024 purchase agreement between non-party Epstein and Rosario Scalise, LLC to which Welty-Meyer referred, and Welty-Meyer, as the listing broker for that transaction, knew or should have known that no such notice had been given to Plaintiff.

**ANSWER: Defendants deny each and every allegation contained in paragraph 40**

**under Count IV of Plaintiff's First Amended Complaint.**

41. The "$26,000 in commissions" Welty-Meyer represented as lost was not lost it was contingent deferred income that would be paid upon any successful closing of the property. Welty-Meyer's representation that those commissions would "never [be gotten] back" was itself materially false at the time made. The commissions were contingent on a closing the conspirators were attempting to engineer through the false statements and the resulting eviction. The property did in fact close -Defendant Epstein sold it to Peachtree Partners-Indiana I, LLC on January 21, 2025 for $550,000, which was $35,000 more than the $515,000 price under the Rosario Scalise, LLC purchase agreement, as Epstein confirmed in his testimony at the state-court damages proceeding. Because the sale closed at an increased price, the commissions Defendants Welty-Meyer and Gloy characterized as lost were neither lost nor unrecoverable, and the representations of financial injury underlying the May 2024 submissions were false when made.

**ANSWER: Defendants deny each and every allegation contained in paragraph 41 under Count IV of Plaintiff's First Amended Complaint.**

42. On December 4, 2024, an unsigned statement bearing Defendant Welty-Meyer's name was filed by counsel for Lakefront Associates, LLC into Plaintiff's separate appellate proceedings in Cause No. 24A-EV-01815, attached hereto as Exhibit D. In that subsequent statement the Welty-Meyer document represented under oath that Welty-Meyer had spoken with Carolyn Stiles at Fidelity Title and that Stiles had stated: "We never had any clear close documents from lender provided either before or after September 30." This subsequent statement directly contradicts Welty-Meyer's May 21, 2024 sworn representation that Plaintiff's "obtuse nature" had caused the failed closings, because the subsequent statement attributes the failed

closing to the buyer's lender - not to any conduct by Plaintiff. The contradiction establishes that Welty- Meyer's May 21, 2024 sworn statement was made with reckless disregard for the truth.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 42 under Count IV of Plaintiff's Complaint, and the same are therefore denied.**

***E. The Gloy Letter Filed May 22, 2024***

43. On May 22, 2024, Marge Skwiat Gloy, a licensed real estate broker affiliated with Defendant Dunegrass Properties, Inc., submitted an unsworn, undated letter to LaPorte Superior Court No. 4, addressed directly to the Honorable Greta Sterling Friedman, attached hereto as Exhibit B. The letter was filed as part of Lakefront Associates, LLC's May 22, 2024 Motion to Expedite Hearing. The letter contained the following material factual representations:

a. That Plaintiff “refused to move out" and had not paid rent.

b. That Plaintiff “repackages and inventories them, all suggests he is a hoarder [sic].”

c. That "Another agent and I have worked with this contract going on 6 months, and have lost $20 thousand plus income."

d. An explicit incorporation of the contemporaneous unsworn letter from Defendant Redlarczyk by way of the express direction: "See prior lessor's letter on his dilemma.”

**ANSWER: Defendants admit the allegations contained in paragraph 43 under Count IV of Plaintiff's First Amended Complaint.**

44. Gloy's submission was a letter, not a swam affidavit. The submission was undated and was not signed under penalties of perjury and therefore did not qualify as an affidavit under

Indiana law. The Indiana Court of Appeals subsequently confirmed this characterization by granting Plaintiff s Motion to Strike the document from the appellate record.

**ANSWER: Defendants admit the allegations contained in paragraph 44 under Count IV of Plaintiff's First Amended Complaint.**

45. Gloy's statements were made without firsthand knowledge of Plaintiff's payment history, lease obligations, or the actual conditions at the separate tenancy at 107 Freyer Road. Gloy explicitly relied upon and incorporated by reference Defendant Redlarczyk's unsworn letter as her authority for statements about Plaintiff's conduct at a property where she had no firsthand knowledge.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 45 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

46. Gloy acted at all relevant times within the scope of her agency and employment as a licensed broker affiliated with Defendant Dunegrass Properties, Inc. operating under the Weichert Realtors -Merrion Group trade name. Defendant Dunegrass Properties, Inc., as Gloy's principal, is vicariously liable for the tortious conduct of its agent Gloy under the doctrine of respondeat superior. Gloy is not named as an individual defendant in this Complaint; her conduct is attributed to Defendant Dunegrass Properties, Inc.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 46 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

47. Upon information and belief, Defendant Glay further facilitated a fraudulent property showing to a commercial liquidation purchaser, representing the showing as a

prospective real estate buyer's tour when in fact the purpose was to allow the liquidator to appraise Plaintiff's commercial inventory at non-party Epstein's direction. This deceptive use of the listing brokerage's access to the 210 Freyer Property for purposes other than the sale of the real estate constitutes a breach of professional duty under Indiana real estate regulations and is direct evidence of Gloy's coordination with Epstein in efforts to harm Plaintiff's commercial interests beyond what was apparent from the May 2024 submissions alone.

**ANSWER: Defendants deny each and every allegation contained in paragraph 47 under Count IV of Plaintiff's First Amended Complaint.**

***F. The Redlarczyk Unsworn Ex Parte Letter to Judge Friedman***

48. In or about May 2024, Defendant Chris Redlarczyk submitted to the Honorable Greta Sterling Friedman, addressed directly to her chambers, an unsworn and unnotarized letter concerning Plaintiff; attached hereto as Exhibit C. The letter was submitted on the letterhead of Freezing Systems & Services, Inc., a separate Redlarczyk-controlled entity. The letter expressly identified Redlarczyk as the "rightful owner of Freezing Systems & Services Inc and the rightful owner of Redlarczyk Properties and the entire building" at 107 Freyer Road. The letter was filed as part of Lakefront Associates, LLC's May 22, 2024 Motion to Expedite Hearing. The letter contained the following material factual representations:

a. "Despite repeated requests and notices since January 2023. Mr. Bricker has failed to vacate the premises deadline on July 1st, 2023."

b. "John has not paid any rent since September 2023, resulting in significant financial losses for me."

c. That Plaintiff was an obstructionist tenant whose continued occupation had caused Redlarczyk to lose "a long-term lease amounting to a much needed $10,000 per month versus $1800 per month."

d. The express statement of advocacy: "I respectfully support Mr. Epstein claims against Mr. John Bricker, who has no regards state laws, or even the common courtesy to move out by last year July's deadline."

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 48 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

49. Each of the above representations was materially false. Defendant Redlarczyk knew the representations to be false at the time he made them, or alternatively, made them with reckless disregard for the truth.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 49 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

50. Defendant Redlarczyk's representations that Plaintiff "failed to vacate" and "refused to vacate" were contradicted by Defendant Redlarczyk's own conduct toward Plaintiff during the same period: at no time did Defendant Redlarczyk or Defendant Redlarczyk Properties, LLC ever serve Plaintiff with written notice of termination as required to terminate a month-to-month tenancy under Indiana law. At no time did Defendant Redlarczyk file an eviction action. At no time did Defendant Redlarczyk demand that Plaintiff vacate by any particular date in writing.

**ANSWER: Defendants are without sufficient knowledge or information to form a**

**belief as to the truth or falsity of the allegations contained in paragraph 50 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

51. Defendant Redlarczyk's representations that Plaintiff had "failed to pay any rent since September 2023" were misleading: Plaintiff had ceased paying rent in September 2023 only after personally meeting with Defendant Redlarczyk and disclosing that the rent withholding was the legally protected response to documented habitability failures at 107 Freyer Road -failures Defendant Redlarczyk himself acknowledged in the same letter when he wrote that the property had a "dire need" to "replace the roof so we can get equipment indoors and out of the harsh outside elements."

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 51 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

52. Defendant Redlarczyk' s representation that Plaintiff's continued occupation had cost Redlarczyk. a "much needed $10,000 per month" long-term lease was false. The prospective lease Defendant Redlarczyk referenced -a tenancy with a customer requiring space for battery production equipment fabrication -had already fallen through as a result of factors unrelated to Plaintiff's occupation. Plaintiff's continued occupation of the premises did not cause and could not have caused the loss of that prospective lease.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 52 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

53. Defendant Redlarczyk's representation that Plaintiff had operated his commercial inventory without regard for "state laws, or even the common courtesy" was contradicted by approximately sixteen years of amicable and undisturbed tenancy. No reasonable landlord, after sixteen years of accepting Plaintiff as a tenant, would honestly characterize that tenancy to a court in the terms Redlarczyk used.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 53 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

54. Defendant Redlarczyk's text-message communications with Plaintiff during the same period the letter was submitted to Judge Friedman directly contradict the substance of the letter. Within ten days of the letter's filing in the eviction proceeding, Defendant Redlarczyk texted Plaintiff casually about his upcoming Canadian fishing trip and asked about Plaintiff's "eta completion of moving out." Three months later, in August 2024, Defendant Redlarczyk again texted Plaintiff in friendly terms inquiring about move-out progress. A landlord who has formally represented to a court that his tenant "refused to vacate" and is causing him substantial financial loss does not, days later, text that tenant casually about Canadian fishing and walleye. The disconnection between Defendant Redlarczyk's contemporaneous texts and his representations to the court establishes that the representations to the court were knowingly false or made with reckless disregard for the truth.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 54 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

***G. The Hub-and-Spoke Structure of the May 2024 Conspiracy***

55. The Welty-Meyer affidavit, the Gloy letter, and the Redlarczyk letter were not independent communications by witnesses with firsthand knowledge of Plaintiff. They were the coordinated work product of a conspiracy organized by non-party James M. Epstein, the plaintiff in the underlying eviction proceeding, and executed by Welty-Meyer, Gloy (through Dunegrass Properties, Inc.), and Redlarczyk in support of Epstein's scheme to evict Plaintiff from the 210 Freyer Property.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 55 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

56. Each participant in the conspiracy had identifiable consideration for participation. Defendants Welty-Meyer and Dunegrass Properties, Inc. were motivated by real estate commissions contingent on the successful eviction and sale of the property -commissions Welty-Meyer specifically referenced in her affidavit as "$26,000 in commissions" and that Gloy referenced as "$20 thousand plus income." These were not losses but deferred commissions contingent on closing.

**ANSWER: Defendants deny each and every allegation contained in paragraph 56 under Count IV of Plaintiff's FIRST AMENDED Complaint.**

57. Defendant Redlarczyk's consideration was non-monetary but no less valuable. Defendant Redlarczyk's commercial operations at 107 Freyer Road periodically required delivery of oversized industrial equipment, including fabricated towers exceeding thirty feet in height. The road geometry of Freyer Road creates a turning radius that prevents standard heavy-haul tractor- trailer rigs from accessing 107 Freyer Road directly, requiring use of specialty steerable trailers at an additional cost of several thousand dollars per delivery, or alternatively, transit

through adjacent commercial property. Non-party James M. Epstein, as the personal title-holder of the adjacent 210 Freyer Property, possessed the ability to grant or withhold transit access through that property. Upon information and belief, Epstein granted Redlarczyk this transit access in exchange for Redlarczyk' s coordinated written support of Epstein's eviction action against Plaintiff.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 57 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

58. Contemporaneous text-message communications between non-party James M. Epstein and Plaintiff during the relevant period -communications presently in Plaintiff's possession and to be produced in discovery -establish that the specific factual content of the May 2024 submissions by Defendants Welty-Meyer. Gloy, and Redlarczyk originated with Epstein and was injected into the court record through coordinated execution by the conspirators. Specifically: in March 5, 2024 texts, Epstein acknowledged that the failed property closings were attributable to the buyer's financing difficulties, not to any conduct by Plaintiff (contradicting the Welty-Meyer affidavit attributing the failures to Plaintiff's "obtuse nature"); in March 22 and 23, 2024 texts, Epstein proposed that Plaintiff move inventory to "my cousin's warehouse in South Bend" (a proposed alternative Gloy later parroted in her letter by describing Plaintiff as having refused alternate locations because "South Bend was too far") and in April 22, 2024 texts, Epstein declared that Plaintiff had been "fucking Chris since January of 2023" (a temporal framing Defendant Redlarczyk subsequently adopted in his unsworn letter by representing that Plaintiff had failed to comply with notices "since January 2023").

**ANSWER: Defendants are without sufficient knowledge or information to form a**

**belief as to the truth or falsity of the allegations contained in paragraph 58 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

59. The conspiracy was further coordinated through non-party John Epstein, the deceased brother of James M. Epstein. In a May 3, 2024 text message to Plaintiff, John Epstein transmitted a fake "press release" he had drafted titled "Restaurant Equipment Hoarder Gets Sued for $150,000 in Michigan City" -introducing the "hoarder" characterization that Defendant Gloy subsequently incorporated into her May 22, 2024 letter to Judge Friedman. The same May 3, 2024 message threatened that Defendants would "give your shit away right in front of your eyes" and "come after all your assets for damages". John Epstein further sent a May 23, 2024 message -sent the day after the Gloy letter was filed -purporting to be from "Jim Epstein, Lakefront Associates, LLC" and threatening $10,000 per month "non-lease short term storage" charges. These contemporaneous communications establish active real-time coordination among the conspirators.

**ANSWER: Defendants deny each and every allegation contained in paragraph 59 under Count IV of Plaintiff's First Amended Complaint.**

60. On January 19, 2025 -within days of non-party Peachtree Partners-Indiana I, LLC's acquisition of the 210 Freyer Property from Lakefront Associates, LLC -James M. Epstein sent a text message to a third party stating: "Now Bricker is my main focus to make his life hell and broke." This statement, made by the orchestrator of the May 2024 conspiracy after the conspiracy had achieved its immediate objectives, constitutes express malice supporting punitive damages.

**ANSWER: Defendants deny each and every allegation contained in paragraph 60 under Count IV of Plaintiff's First Amended Complaint.**

***H. Plaintiff's Direct Notice to WREA Corporate***

61. In or about May 2024, Plaintiff placed telephone call from his Michigan residence to Mr. Peter Zafonte, President of the franchise division of Defendant Weichert Real Estate Affiliates, Inc., at WREA' s corporate offices in Morris Plains, New Jersey. The call connected. Plaintiff spoke with Mr. Zafonte for some time. Telecommunications carrier records (AT&T) substantiating the call have been requested by Plaintiff and will be produced when received.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 61 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

62. During the call, Plaintiff communicated to Mr. Zafonte that licensed Weichert-affiliated brokers at WREA's franchisee, Weichert Realtors -Merrion Group, had filed materially false sworn statements and letters in an Indiana state-court eviction proceeding. Mr. Zafonte acknowledged Plaintiff s complaint and represented to Plaintiff that he would investigate the matter.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 62 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

63. Despite Mr. Zafonte's express undertaking to investigate, WREA took no corrective action. WREA did not instruct Defendant Welty-Meyer or Defendant Dunegrass Properties, Inc. to retract or amend the false statements. WREA did not investigate Plaintiff s complaint. WREA did not contact Plaintiff with any further communication regarding the matter. WREA continued to extend brand-license rights and support services to a franchisee whose licensed brokers had -

by the franchisor's own knowledge and acknowledgment -filed false statements in an Indiana court proceeding.

**ANSWER: Defendants deny each and every allegation contained in paragraph 63 under Count IV of Plaintiff's First Amended Complaint.**

63A. After the May 2024 eviction and the subsequent lockout, non-party Epstein and Rosario Scalise, LLC executed a renewed purchase agreement dated July 29, 2024 for the same Property, and Rosario Scalise, LLC was ready, willing, and able to close on or before September 30, 2024. Epstein nonetheless refused to close with Scalise -as established by the Verified Complaint for Specific Performance that Rosario Scalise, LLC filed against Epstein (Exhibit M), the pendency of which clouded title to the Property through a lis pendens recorded on or about October 28, 2024 -- and instead sold the Property to Peachtree Partners-Indiana I, LLC on January 21, 2025 for the higher price of $550,000. That Epstein abandoned a ready, willing, and able buyer in order to accept a higher competing offer, and that the sale was contested through litigation and a recorded lis pendens rather than impaired by anything Plaintiff did, confirms that the financial injury Defendants Welty-Meyer and Gloy attributed to Plaintiff in their May 2024 submissions was false.

**ANSWER: Defendants deny each and every allegation contained in paragraph 63A under Count IV of Plaintiff's First Amended Complaint.**

64. Marge Skwiat Gloy thereafter made a statement to Plaintiff acknowledging Plaintiff s communication with WREA corporate and characterizing Plaintiff's efforts as "unsuccessful" - meaning that WREA had taken no corrective action. This statement establishes that Defendants Welty-Meyer and Dunegrass Properties, Inc. had actual knowledge of Plaintiff's complaint to WREA corporate, monitored the outcome of that communication, and were

satisfied with WREA's decision not to act. Upon information and belief, Mr. Zafonte communicated the substance of Plaintiff's complaint to Defendant Welty-Meyer, who in turn communicated the substance of WREA's decision not to act to Gloy. This chain of communication establishes coordinated awareness among the conspirators that the false statements would remain in the court record uncorrected.

**ANSWER: Defendants deny each and every allegation contained in paragraph 64 under Count IV of Plaintiff's First Amended Complaint.**

***I. The Realtors Leveraged Their Professional Credibility***

65. Defendants Welty-Meyer and Gloy, in their capacities as licensed real estate professionals with established credibility in the Michigan City commercial community, leveraged that credibility to make sworn and unsworn statements before the trial court that accelerated the eviction process and overrode the specific contractual protections in Plaintiff's lease. The professional credibility of licensed Indiana real estate brokers, presumed by courts and by the public to be familiar with real estate law, contractual notice provisions, and commercial tenancy practice, was used in this instance not to assist the court with reliable information but to manufacture acceleration that bypassed contractual protections including the certified-mail notice requirement, the 60-day cancellation requirement, the 10-day written cure period for any alleged default, and the rent-claw back provision in the event of landlord-of property sale.

**ANSWER: Defendants deny each and every allegation contained in paragraph 65 under Count IV of Plaintiff's First Amended Complaint.**

65A. The defamatory statements made by Defendant Welty-Meyer were not confined to the court record. Defendant Welty-Meyer and Defendant Gloy operated from a shared brokerage office at 1010 N. Karwick Road, Michigan City, Indiana, staffed by multiple licensed real estate

agents, all of whom serviced the Long Beach and Michigan City commercial real estate market - the same market in which Plaintiff had conducted his commercial restaurant equipment business for more than fourteen years and in which Plaintiff was known to the local business community. During the period leading up to and following the May 2024 filings, Plaintiff had direct personal contact with agents affiliated with the Weichert Realtors - Merrion Group office, during which those agents communicated to Plaintiff their frustration with non-party James M. Epstein as a seller and with the difficulties surrounding the 210 Freyer Property transaction. On at least one occasion, Defendant Gloy was visibly and emotionally distressed in Plaintiff's presence -to the point of crying -as a result of verbal abuse directed at her by non-party Epstein in connection with the same transaction. Upon information and belief, Defendant Welty-Meyer's and Defendant Gloy's false characterizations of Plaintiff -as a non-paying, obstructionist tenant whose conduct had cost the brokerage commissions -were communicated to and discussed among the agents of the Weichert Realtors-Merrion Group office, and were published outside the court proceedings and outside the protection of any litigation privilege. In and around the spring and summer of 2024 -the period surrounding the April 2024 eviction filing and the May 2024 submissions -- Defendant Dunegrass Properties, Inc., through its licensed agents, including the agent who authored the May 22, 2024 letter attached as Exhibit B, repeated those characterizations to third parties involved in the sale of the 210 Freyer Property and to members of the local commercial real estate community, including by communicating to the prospective buyer's real estate agent that Plaintiff was "obstructing the sale." Each such out-of-court communication was a publication to a person other than the court, is not protected by any absolute litigation privilege applicable to the court filings, and constitutes a separate act of publication of the defamatory statements to third parties in the commercial real estate community

that directly services Plaintiff's established business market. The identities of the specific recipients are known to Plaintiff and will be established through discovery.

**ANSWER: Defendants deny each and every allegation contained in paragraph 65A under Count IV of Plaintiff's First Amended Complaint.**

65B. Upon information and belief, non-party James M. Epstein --the organizer of the conspiracy described herein --circulated and discussed Defendant Welty-Meyer's written submission to third parties outside the court proceeding as though it were an authoritative professional assessment of Plaintiff, using it as a badge of credibility to reinforce and spread the same false narrative. Epstein presented Welty-Meyer's statements as the position of a nationally recognized real-estate organization, thereby magnifying their defamatory impact and enabling their broader dissemination within the LaPorte County and Northwest Indiana commercial community. This extra-judicial republication occurred outside any judicial proceeding and outside the protection of any litigation privilege. Because Epstein acted as a co-conspirator, and because such republication was the natural and foreseeable consequence of submitting the statements under the authority of the Weichert brand, the republication and its defamatory effect are attributable to Defendants Welty-Meyer and Dunegrass Properties, Inc.

**ANSWER: Defendants deny each and every allegation contained in paragraph 65B under Count IV of Plaintiff's First Amended Complaint.**

***J. The Corporate-Compliance Failures of the Franchisee***

66. During the period the false statements were prepared, filed, and left uncorrected in the court record, the franchisee operating under the Weichert brand at 1010 N. Karwick Road was in continuous and progressively worsening regulatory default. Defendant Dunegrass Properties, Inc. failed to file its required Indiana Business Entity Report by the February 29,

2024 deadline. On August 5, 2024 --approximately seventy-five days after the May 2024 false statements were filed --Dunegrass Properties, Inc. was administratively dissolved by the Indiana Secretary of State. The "Weichert Realtors -Merrion Group" assumed business name registration of Dunegrass Properties, Inc. was administratively cancelled.

**ANSWER: Defendants deny each and every allegation contained in paragraph 66 under Count IV of Plaintiff's First Amended Complaint.**

67. Notwithstanding the administrative dissolution of the underlying corporate vehicle and the cancellation of the assumed business name, the brokerage at 1010 N. Karwick Road continued to operate under the "Weichert Realtors -Merrion Group" trade name through the date of this Complaint. The Indiana Real Estate Commission Broker Company license issued to Dunegrass Properties, Inc. remained listed as active, notwithstanding the underlying corporate default. Defendant Welty-Meyer, as managing broker, continued to operate the brokerage daily under the Weichert brand on a corporate vehicle that had no valid legal existence and an assumed business name that was no longer registered. Indeed, the Indiana Real Estate Commission Broker Company license (No. RC51400056) issued to Dunegrass Properties, Inc. was renewed on June 22, 2026 --approximately twenty-two months after the corporation' s August 5, 2024 administrative dissolution -reflecting the continued operation of an active, going-concern brokerage staffed by numerous affiliated licensees rather than the winding up and liquidation to which a dissolved Indiana corporation is limited by law.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 67 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

68. Defendant WREA's franchise agreement with Dunegrass Properties, Inc., as reflected in WREA's Franchise Disclosure Document issued March 14, 2025, requires franchisees to comply with operating standards established by WREA, confers on WREA inspection and audit rights, and authorizes WREA to terminate franchise agreements for non-compliance with brand standards and regulatory requirements. WREA, in coordination with Defendant Weichert of North America, Inc.--its Indiana-licensed affiliate operating a Weichert-branded brokerage office in Carmel, Indiana through a designated Indiana franchise manager --possessed actual or constructive knowledge of the public Indiana Secretary of State records establishing the franchisee's corporate default. WREA and Weichert of North America possessed the contractual rights and operational capability to detect, investigate, and correct the corporate-compliance failures of the franchisee. They did not do so. The franchise relationship continued uninterrupted. The Weichert brand continued to be extended to a brokerage operating through a non-existent corporate vehicle.

**ANSWER: Defendants deny each and every allegation contained in paragraph 68 under Count IV of Plaintiff's First Amended Complaint.**

***K. The Procedural Course of the Eviction and Appeal***

69. On July 10, 2024, the Honorable Greta Sterling Friedman conducted the accelerated eviction hearing in Lakefront Associates, LLC v. John Bricker. The Welly-Meyer affidavit, the Gloy letter, and the Redlarczyk Jetter were before the trial court. Plaintiff was not given an opportunity to cross-examine the affiants. On July 22, 2024, Judge Friedman entered an order of possession in favor of Lakefront Associates, LLC. The order acknowledged that "neither party was able to prove by a preponderance of the evidence whether [the] check was received" --meaning the only pled basis for the eviction (non-payment of rent) had not been proven. The

order nonetheless granted possession on alternative grounds the trial court constructed after the pled claim failed, including a "complaint as notice" theory unsupported by Indiana published authority.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 69 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

70. On August 1, 2024 --ten days after entering the order of possession --Judge Friedman signed an Order of Recusal in the same proceeding, stating: "Pursuant to Rule 2.1l(a)(1) of the Indiana Code of Judicial Conduct, I, Greta Friedman, presiding Judge of La Porte Superior Court No. 4, must recuse myself from this case, as my impartiality might be reasonably questioned." The disqualifying condition that the recusal acknowledged existed at the time of the order of possession.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 70 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

71. On January 17, 2025, the Indiana Court of Appeals issued an order granting Plaintiff s Motion to Strike Attachments I, II, and III to Lakefront Associates, LLC's appellate Motion to Dismiss, attached hereto as Exhibit G. The stricken attachments included the Welty-Meyer affidavit, the Gloy letter, the Redlarczyk letter, and additional submissions filed by Lakefront Associates, LLC in support of its appellate motion. The Indiana Court of Appeals' order disposition corroborates that the Gloy and Redlarczyk submissions were unsworn ex parte communications that did not qualify as affidavits under Indiana law.

**ANSWER: Defendants deny each and every allegation contained in paragraph 71**

**under Count IV of Plaintiff's First Amended Complaint.**

72. On June 4, 2025, the Indiana Court of Appeals issued a non-precedential memorandum decision affirming the trial court's eviction order. attached hereto as Exhibit fi'. Bricker v. Lakefront Associates, LLC Court of Appeals Case No. 24A-EV-1815 (Mem. Dec. June 4, 2025). The affirmance was issued under the prima-facie-error standard because Lakefront Associates, LLC did not file an appellee's brief, and rested exclusively on the trial court's alternative "complaint as notice" rationale. The appellate court's decision quoted the Lease's contractual provisions verbatim --including the certified-mail notice requirement, the 60-day cancellation requirement, the clawback provision requiring return of prepaid rent upon sale-triggered termination, and the default procedure requiring written notice and a ten-day cure period --but expressly declined to analyze whether any of those contractual provisions had been complied with. The appellate court's decision (at paragraph 18) stated: "We need not address those issues to sustain the court's judgment, however, because the order provided alterative bases for that ruling." Plaintiff's Petition to Transfer to the Indiana Supreme Court was thereafter denied. The eviction order is therefore final, but the substantive contractual issues, the falsity of the May 2024 affidavits and letters, and the conspiracy that procured the eviction were never adjudicated on the merits in the state-court proceedings.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 72 under Count IV of Plaintiff's First Amended Complaint, and the same are therefore denied.**

## V. CAUSES OF ACTION

***COUNT I -DEFAMATION PER SE***

***(Against Defendants Welty-Meyer, Dunegrass Properties Inc., Redlarczyk, and Redlarczyk Properties LLC)***

73. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

**ANSWER: Defendants incorporate by reference their admissions and denials stated above.**

74. Defendant Welly-Meyer's May 21, 2024 sworn affidavit contained false statements of fact about Plaintiff, including that Plaintiff had "refused to move out" of leased premises, had "hasn't paid rent," had caused two failed real estate closings through "obtuse nature” costing $26,000 in commissions, and had "injur[ed] so many people." Each statement was a statement of fact, not opinion. Each was published by Welty-Meyer to a court of law and is now part of the permanent public court record.

**ANSWER: Defendants deny each and every allegation contained in paragraph 74 under Count V of Plaintiff’s First Amended Complaint.**

75. Marge Skwiat Gloy's May 22, 2024 unsworn letter, for which Defendant Dunegrass Properties, Inc. is vicariously liable as Gloy's employer and principal, contained false statements of fact about Plaintiff, including that Plaintiff had "refused to move out," was a “hoarder,” and had caused $20,000-plus in lost commission income. The unsworn nature of the Gloy submission was subsequently confirmed by the Indiana Court of Appeals’ January 17, 2025 order striking the submission from the appellate record.

**ANSWER: Defendants deny each and every allegation contained in paragraph 75 under Count V of Plaintiff’s First Amended Complaint.**

76. Defendant Redlarczyk’s May 2024 unsworn letter to Judge Friedman, for which Redlarczyk acted in furtherance of the interests of Defendant Redlarczyk Properties, LLC as its principal, contained false statements of fact about Plaintiff, including that Plaintiff had "failed to

vacate" required deadlines, “has not paid any rent" since September 2023 in actionable default, and had caused Redlarczyk to lose a $10,000-per-month long-term lease.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 76 under Count V of Plaintiff’s First Amended Complaint, and the same are therefore denied.**

77. Each of the above statements constitutes defamation per se under Indiana law because the statements directly imputed to Plaintiff: (a) misconduct or want of integrity in business dealings; (b) conduct affecting Plaintiff's trade, business, or commercial reputation in a manner injurious to the conduct of his business;(c) the commission of acts in violation of law or contractual obligations; and (d) characteristics tending to deter potential business partners, customers, and the broader business community from associating with Plaintiff.

**ANSWER: Defendants deny each and every allegation contained in paragraph 77 under Count V of Plaintiff’s Complaint.**

78. Defendant Welty-Meyer made her sworn statements with actual malice or, at minimum, reckless disregard for the truth. Welty-Meyer had no firsthand knowledge of Plaintiff's payment history or lease obligations. Welty-Meyer's own subsequent December 2024 statement, attributing the failed closings to the buyer's lender's failure to provide documents (not to Plaintiff s conduct), directly contradicts her May 2024 sworn representations.

**ANSWER: Defendants deny each and every allegation contained in paragraph 78 under Count V of Plaintiff’s First Amended Complaint.**

79. Defendant Redlarczyk made his unsworn statements with actual malice or, at minimum, reckless disregard for the truth. Redlarczyk's contemporaneous text-message communications with Plaintiff directly contradict his representations to the court that Plaintiff

had refused to vacate. Redlarczyk's own letter acknowledged the deteriorating roof condition that made the building uninhabitable for inventory storage. Redlarczyk's representation that the lost $10,000 per month lease was attributable to Plaintiff's occupation was false because the prospective lease had already fallen through for unrelated reasons.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 79 under Count V of Plaintiff's First Amended Complaint, and the same are therefore denied.**

80. Because the statements constitute defamation per se, damage to Plaintiff's reputation is presumed under Indiana law. The defamatory statements published by Defendants in Plaintiff's eviction proceeding are now part of the permanent public court record, accessible to any prospective employer, lender, business partner, customer, or member of the public through Indiana's public records portal (mycase.in.gov) without charge. Unlike a damages award which can be appealed or reversed, the publication of these false statements in the public court record cannot be undone. Each future search of Plaintiff's name in the public court records returns these defamatory characterizations as part of his apparent history. This permanent reputational damage is a continuing harm independent of any monetary recovery.

**ANSWER: Defendants deny each and every allegation contained in paragraph 80 under Count V of Plaintiff's First Amended Complaint.**

80A. The absolute privilege for statements made in the course of judicial proceedings does not bar this action, for three independent reasons. First, several of the defamatory characterizations of Plaintiff --including that Plaintiff is a "hoader[sic]" and that Plaintiff "injur[ed] so many people" --were gratuitous personal attacks bearing no pertinent or relevant relationship to the only matters before the eviction court, namely whether Plaintiff had paid rent

and whether Lakefront Associates, LLC was entitled to possession; under Indiana law the absolute privilege extends only to statements pertinent and relevant to the subject of the litigation, and statements exceeding that scope are subject at most to a qualified privilege that is defeated by the malice and knowing falsity alleged herein. Second, Defendant Redlarczyk was neither a party, a witness, nor counsel in Lakefront Associates, LLC v. Bricker, and his unsworn, unsolicited ex parte letter addressed a separate month-to-month tenancy at a different property (107 Freyer Road) that was not at issue in that eviction proceeding; his statements therefore fall outside both the class of participants and the subject matter that the absolute privilege protects. Third, as alleged in Paragraphs 65A and 65B, the false characterizations of Plaintiff were republished outside the court proceedings, where no litigation privilege applies.

**ANSWER: Defendants deny each and every allegation contained in paragraph 80A under Count V of Plaintiff's First Amended Complaint.**

81. In addition to the presumed reputational damage, Plaintiff has suffered substantial actual damages flowing from the publication of the statements in court records, including lost business income from the more-than-two-year shutdown of an established commercial enterprise, reputational harm in the local commercial business community, emotional distress, and consequential damages from the disruption to his ability to conduct business.

**ANSWER: Defendants deny each and every allegation contained in paragraph 81 under Count V of Plaintiff's First Amended Complaint.**

***COUNT II -CIVIL CONSPIRACY***
***(Against All Defendants)***

82. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

**ANSWER: Defendants incorporate by reference their admissions and denials stated above.**

83. Defendants Welty-Meyer, Dunegrass Properties, Inc. (through Welty-Meyer and Gloy), Redlarczyk, and Redlarczyk Properties, LLC, together with non-parties James M. Epstein, the deceased John Epstein, Lakefront Associates, LLC. and Marge Skwiat Gloy, combined and agreed to accomplish, through the unlawful means of false sworn affidavits and unsworn ex parte communications to a sitting judge, the lawful purpose of evicting Plaintiff from the 210 Freyer Property.

**ANSWER: Defendants deny each and every allegation contained in paragraph 83 of Plaintiff's First Amended Complaint.**

84. The combination among the conspirators was supported by valuable consideration to each: Defendants Welty-Meyer and Dunegrass Properties, Inc. received the prospect of real estate commissions contingent on the successful eviction (contingent deferred income, not losses); Defendant Redlarczyk and Defendant Redlarczyk Properties, LLC received the practical benefit of transit access through non-party Epstein's adjacent property at 210 Freyer Road, providing substantial economic benefit to their commercial operations at 107 Freyer Road non-party Epstein received the strategic benefit of an eviction order he could not obtain on the only basis he had pled, supported by false statements containing content he himself supplied or directed.

**ANSWER: Defendants deny each and every allegation contained in paragraph 84 of Plaintiff's First Amended Complaint.**

85. Defendants WREA and Weichert of North America participated in or ratified the conspiracy by virtue of their actual knowledge --obtained through Plaintiff s May 2024 telephone

communication with Mr. Peter Zafonte --of the false statements and their decision to take no corrective action. The franchisor-level defendants' continued extension of the Weichert brand to an Indiana franchisee operating through a corporate vehicle in continuous regulatory default, while on actual notice of the false statements made by that franchisee's licensed brokers, constituted ratification of and participation in the conspiracy.

**ANSWER: Defendants deny each and every allegation contained in paragraph 85 of Plaintiff's First Amended Complaint.**

86. The conspiracy succeeded in its immediate objective. The Welty-Meyer affidavit, the Gloy letter, and the Redlarczyk letter materially influenced Judge Friedman' s July 22, 2024 order of possession in favor of non-party Lakefront Associates, LLC.

**ANSWER: Defendants deny each and every allegation contained in paragraph 86 of Plaintiff's First Amended Complaint.**

87. Each Defendant who joined the conspiracy is jointly and severally liable for the damages caused by the conspiracy and by acts in furtherance of the conspiracy, regardless of whether each Defendant personally performed each act.

**ANSWER: Defendants deny each and every allegation contained in paragraph 87 of Plaintiff's First Amended Complaint.**

***COUNT III -NEGLIGENT MISREPRESENTATION***
***(Against Defendants Welty-Meyer and Dunegrass Properties Inc.)***

88. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein

**ANSWER: Defendants incorporate by reference their admissions and denials stated above.**

89. As licensed Indiana real estate professionals submitting sworn statements and written communications to a court, Defendants Welty-Meyer and Gloy (through Dunegrass Properties, Inc.) owed a duty to exercise reasonable care to ensure that the factual representations they made were accurate and supported by firsthand knowledge or by reasonable investigation.

**ANSWER: Defendants admit the allegations contained in paragraph 89 of Plaintiff's First Amended Complaint.**

90. Defendants breached that duty by swearing to or representing as fact -including Plaintiff's alleged non-payment, alleged responsibility for failed closings, alleged refusal to vacate, and the characterization of Plaintiff as a "hoader" --without conducting any reasonable inquiry into the underlying facts and without firsthand knowledge.

**ANSWER: Defendants deny each and every allegation contained in paragraph 90 of Plaintiff's First Amended Complaint.**

91. Plaintiff suffered substantial harm as a direct and proximate result of Defendants' negligent misrepresentations.

**ANSWER: Defendants deny each and every allegation contained in paragraph 91 of Plaintiff's First Amended Complaint.**

***COUNT IV -NEGLIGENT SUPERVISION***
***(Against Defendants Weichert Real Estate Affiliates, Inc. and Weichert of North America, Inc.)***

92. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

**ANSWER: Defendants incorporate by reference their admissions and denials stated above.**

93. Defendants WREA and Weichert of North America owed a duty to Plaintiff and to similarly situated third parties to exercise reasonable supervisory care over the licensed brokers operating under the Weichert brand in Indiana. That duty included, at minimum, the obligation to monitor franchisee compliance with the franchise agreement's corporate-status and regulatory- compliance requirements (as documented in WREA's March 14, 2025 Franchise Disclosure Document), and the obligation to investigate and correct misconduct by Weichert-affiliated brokers when brought to corporate's actual attention. The national scale and brand infrastructure of Defendants WREA and Weichert of North America -including their brand standards, contractual audit and inspection rights, and, in the case of Weichert of North America, an active Indiana Real Estate Commission Broker Company license operated through a designated Indiana managing broker --afforded them heightened, not diminished, capacity to detect and correct the franchisee's regulatory default and the misconduct of its licensed brokers. That capacity renders their failure to act, after actual notice, more culpable rather than excusable.

**ANSWER: Defendants are without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 93 of Plaintiff's First Amended Complaint, and the same are therefore denied.**

94. Defendants breached their supervisory duty in multiple specific respects: (a) they failed to monitor or detect the administrative dissolution of Defendant Dunegrass Properties. Inc. and the cancellation of the Weichert Realtors -Merrion Group assumed business name, both readily ascertainable from public Indiana Secretary of State records; (b) they failed to investigate Plaintiff's May 2024 specific complaint to Mr. Peter Zafonte regarding the false statements by Weichert-affiliated brokers; (c) they failed to instruct the franchisee to retract or amend the

false statements after Mr. Zafonte's express undertaking to investigate; (d) they continued to extend Weichert brand, marketing, and operational support to a franchisee operating through a corporate vehicle with no valid legal existence; and (e) they permitted the continued use of cancelled trade names by the franchisee through the date of this Complaint.

**ANSWER: Defendants deny each and every allegation contained in paragraph 94 of Plaintiff's First Amended Complaint.**

95. The breaches of supervisory duty were a substantial factor in the harm Plaintiff suffered.

**ANSWER: Defendants deny each and every allegation contained in paragraph 95 of Plaintiff's First Amended Complaint.**

***COUNT V - TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE***
***(Against Defendants Welty-Meyer, Dunegrass Properties Inc., Redlarczyk, and Redlarczyk Properties LLC)***

96. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein

**ANSWER: Defendants incorporate by reference their admissions and denials stated above.**

97. At all relevant times, Plaintiff had existing and prospective business relationships, including pending commercial transactions, ongoing business operations, and a commercial reputation in the LaPorte County and Northwest Indiana I Southwest Michigan commercial business community developed over more than a decade.

**ANSWER: Defendants deny each and every allegation contained in paragraph 97 of Plaintiff's First Amended Complaint.**

98. Defendants knew of Plaintiff's commercial operations and his ongoing business relationships. Defendants intentionally interfered with those relationships by submitting false statements to a court that (a) portrayed Plaintiff as a bad-faith businessman to the local business community whose members read court records; (b) immobilized Plaintiff in protracted eviction proceedings; and (c) disrupted his ability to conduct business, move inventory, and complete his own pending sales and acquisitions.

**ANSWER: Defendants deny each and every allegation contained in paragraph 98 of Plaintiff's First Amended Complaint.**

99. Defendants' interference was unjustified, improper, and caused Plaintiff substantial economic loss.

**ANSWER: Defendants deny each and every allegation contained in paragraph 99 of Plaintiff's First Amended Complaint.**

99A. The harm caused by Defendants' conduct is concrete, specific, and directly traceable to the false statements and conspiracy described herein. Prior to the May 2024 false-statement conspiracy and the resulting eviction proceedings, Plaintiff's commercial restaurant equipment business generated annual revenue in excess of $300,000 before the COVID-19 pandemic and approximately $120,000 annually during the pandemic period. As a direct and proximate result of Defendants' false statements and the eviction they were a substantial factor in procuring, Plaintiff s commercial operations were involuntarily shut down for a period exceeding two years beginning August 1, 2024. Plaintiff was further unable to secure replacement commercial space during the pendency of the eviction proceedings and appeals, because doing so would have required committing resources to a new commercial lease while the outcome of the litigation remained unresolved. The false and defamatory characterizations of Plaintiff published by

Defendants in the public court record -permanently accessible through Indiana' s public records portal at mycase.in.gov without charge -constitute continuing reputational harm in the LaPorte County and Northwest Indiana commercial business community where Plaintiff had operated for more than fourteen years. These specific harms were the direct, foreseeable, and proximate result of Defendants' coordinated false statements and the conspiracy through which those statements were made.

**ANSWER: Defendants deny each and every allegation contained in paragraph 99A of Plaintiff's First Amended Complaint.**

99B. Although the physical lockout of Plaintiff from the 210 Freyer Properly was carried out by non-party James M. Epstein, Defendants are legally responsible for the resulting business shutdown, lost revenue, and storage costs because their false statements were a substantial factor in, and a foreseeable cause of, the accelerated eviction and the harm that followed. Defendants' sworn and unsworn submissions were intended to influence the court, to accelerate the hearing, and to portray Plaintiff as a bad-faith tenant, and non-patty Epstein then relied upon and weaponized those statements to justify the lockout. Under Indiana law, a tortfeasor is liable for all harm that is the natural and probable consequence of its wrongful acts, even where a separate actor performs the final step in the chain of causation. The business losses described above flowed directly from the defamatory statements and the conspiracy that produced them, and are pleaded as an independent injury caused by Defendants' tortious conduct, not as a challenge to or request to overturn the state-court judgment.

**ANSWER: Defendants deny each and every allegation contained in paragraph 99B of Plaintiff's First Amended Complaint.**

## VI. DAMAGES

100. As a direct and proximate result of Defendants' conduct as described herein, Plaintiff has suffered and continues to suffer the following categories of damages, in amounts to be proven at trial but in any event in excess of $75,000 exclusive of interest and costs:

a. Lost business income from the involuntary shutdown of Plaintiff s commercial operations for a period of more than two years;

b. Reputational harm, including the permanent entry of false and defamatory characterizations of Plaintiff into the public court record, accessible without charge through Indiana's public records portal and constituting a continuing harm independent of any monetary recovery;

c. Emotional distress arising from the deliberate publication of false statements about Plaintiff to a court of law and the consequential disruption of Plaintiff's established commercial life;

d. Legal expenses incurred as a direct result of proceedings whose course was materially influenced by Defendants' false statements;

e. Consequential damages from the disruption of Plaintiff s business operations, including the inability to return to commercial operations in his established trade following the more-than-two-year shutdown;

f. Punitive damages based on the express malice, actual malice, and reckless disregard for the truth demonstrated by Defendants and the conspirators, in amounts sufficient to deter Defendants and others from similar conduct. Punitive damages are sought based on the named Defendants' own reckless disregard for the truth -demonstrated by Defendant Redlarczyk's contemporaneous text

messages contradicting his written representations to the court and by Defendant Welty-Meyer's later contradictory statement attributing the failed closings to the buyer' s lender rather than to Plaintiff -independent of any malice expressed by the non party co-conspirators.

**ANSWER: Defendants deny each and every allegation contained in paragraph 100 of Plaintiff's First Amended Complaint.**

## VII. RESERVATION OF CLAIMS

101. Plaintiff expressly reserves all claims arising from conduct other than the May 2024 false- statement conspiracy that is the subject of this Complaint. The reserved claims include, but are not limited to:(a) claims against non-party James M. Epstein and Lakefront Associates, LLC, individually and through application of the alter-ego doctrine, for breach of lease, fraud in the inducement of the renewed July 29, 2024 purchase agreement with non-party Rosario Scalise, LLC, tortious interference, abuse of process, conversion, return of all prepaid rent under the lease clawback provision , and related claims arising from the August l, 2024 lockout and subsequent conduct; (b) claims against non-parties Peachtree Partners-Indiana I, LLC, Robert Harnach, and Phil Ferrise arising from pre-formation and post-acquisition conduct including the lockout, the second eviction proceeding, the June 6, 2025 self-eviction without bond, and the conversion of Plaintiff's commercial inventory; and (c) claims against Defendant Redlarczyk Properties, LLC arising from the deteriorated condition of the property at 107 Freyer Road and consequent damage to Plaintiff's commercial inventory during the period of Plaintiff's tenancy. None of the reserved claims is within the scope of this action.

**ANSWER: Defendants deny each and every allegation contained in paragraph 101**

**of Plaintiff's First Amended Complaint.**

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff John Bricker respectfully requests that this Court enter judgment in his favor and against the Defendants, and award the following relief:

a. Compensatory damages in an amount to be determined at trial, but in any event in excess of $75,000 exclusive of interest and costs;

b. Punitive damages in an amount sufficient to deter Defendants and others from similar conduct;

c. A permanent injunction requiring Defendants Welty-Meyer and Dunegrass Properties. Inc. to retract or correct the false statements contained in their May 2024 submissions, and requiring Defendant Redlarczyk to retract or correct the false statements contained in his May 2024 letter;

d. Costs of this action;

e. Pre-judgment and post-judgment interest as allowed by law;

f. Such other and further relief as this Court deems just and proper.

## AFFIRMATIVE DEFENSES

Subject to further investigation and discovery, Defendant, Dunegrass Properties Inc. dba Weichert Realtors Merrion Group, Mary P. Welty-Meyer, Weichert Real Estate Affiliates Inc. and Weichert North America, Inc., by and through counsel, pursuant to the Indiana Rules of Trial Procedure, in further response to Plaintiffs' First Amended Complaint and by way of Additional Defenses, states as follows:

1. Any allegation of Plaintiff not heretofore admitted or denied, are hereby denied.

2. The fault of Plaintiff, as defined in the Indiana Comparative Fault Act, is greater than fifty percent (50%) of the total fault involved, and/or is greater than the fault of all persons or entities whose fault proximately caused or contributed to cause the Plaintiff's damages, and therefore, Plaintiff's actions are barred against the Defendants pursuant to I.C. 34-51-2-6, or in the alternative, the fault of the Plaintiff will proportionately diminish any sums, if at all, to be rendered to and in favor of the Plaintiff's as damages.
3. Plaintiff has failed to mitigate his damages, if any.
4. The actions of the Plaintiff caused or contributed to cause the injuries and damages claimed in Plaintiffs' First Amended Complaint.
5. The statements made by Defendants about the Plaintiff which are described in paragraph 4, 74, 75, 76, 77, 78, 79, 80, 80A, and 81 of Plaintiff's Amended Complaint Complaint are true.
6. Plaintiff's First Amended Complaint fails to state a claim upon which relief may be granted against these Defendants.
7. The plaintiff has suffered no damages cognizable by Indiana law.
8. Plaintiff's claims are barred or reduced by Plaintiff's contributory negligence, if applicable.
9. Defendants expressly reserve the right to raise additional affirmative defenses as they become known, including but not limited to the identification of persons or entities who may be deemed non-parties and, therefore, subject to an allocation of a percentage of fault.
10. The Defendants reserve the right to further plead defenses upon completion of discovery.

**REQUEST FOR TRIAL BY JURY**

Pursuant to Indiana Trial Rule 38(B), Defendants, Dunegrass Properties Inc. dba Weichert Realtors Merrion Group, Mary P. Welty-Meyer, Weichert Real Estate Affiliates Inc. and Weichert North America, Inc., by counsel, respectfully requests trial by jury of all issues in this cause triable of right by a jury.

Respectfully submitted,

*/s/ Mark C. Correll*
Mark C. Correll, #24836-49 IN
*Attorney for Defendants, Dunegrass Properties Inc. dba Weichert Realtors Merrion Group, Mary P. Welty-Meyer, Weichert Real Estate Affiliates Inc. and Weichert North America, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 2, 2026, a true and correct copy of the foregoing document was served to all counsel of record by the CM/ECF System, by U.S. Mail, postage prepaid, or other acceptable means of service, as follows:

John Bricker
PO Box 144
New Buffalo, MI 49117
octovent@fastmail.fm
*Pro Se Plaintiff*

Mark J. Roule
Newby, Lewis, Kaminski & Jones, LLP
916 Lincolnway
La Porte, IN 46350
mjroule@nlkj.com
*Attorney for Defendants, Chris Redlarczyk and Redlarczyk Properties, LLC*

*/s/ Mark C. Correll*
Mark C. Correll

Law Offices of The Hanover Insurance Group Inc.
9229 Delegates Row, Suite 100
Indianapolis, IN 46240
317-208-5804
mcorrell@hanover.com